# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOSEPH THOMAS,
    Petitioner,

    vs.

TIMOTHY BRUNSMAN,
WARDEN,
    Respondent.

Civil Action No. 1:07-cv-858

Barrett, J.
Hogan, M.J.

**REPORT AND**
**RECOMMENDATION**

Petitioner, a state prisoner, brings this case *pro se* seeking a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 1),

respondent's return of writ and exhibits thereto (Doc. 11), and petitioner's traverse. (Doc. 12).

## I. FACTS

This case involves the following facts, as summarized by the First District Ohio Court of

Appeals:[1]

{¶2} Thomas drove a bus for a company that operated Queen City Metro's
"ACCESS" program, a transportation service for the disabled. As part of his job
training, Thomas was taught how to interact with disabled persons. The ACCESS
bus routes were monitored electronically, and the drivers were required to maintain
a "manifest" documenting where they had traveled.

{¶3} Adrienne Bauman was a frequent passenger on Thomas's route. Bauman
suffered from a seizure disorder and was mentally handicapped. Because of her
disabilities, she was unable to maintain regular employment or to live independently.
There was evidence that her mental disability prevented her from finding her way
home if she traveled any significant distance from her residence. She worked for
Goodwill Industries, which provided employment for persons who were unable to
maintain a job in the regular workforce.

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence
of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94
(6th Cir. 2004).

{¶4} Bauman testified that she had been riding the bus from her job one day and that she had been discussing her weekend plans with Melinda Gabelman, another passenger. Bauman testified that the subject of sex had arisen and that Thomas had asked the women if they knew how to perform fellatio.

{¶5} When the bus got to Bauman's regular stop, Thomas continued to drive and went instead to Gabelman's stop. After Gabelman left, Thomas drove to a park, where he took Bauman to the back of the bus. According to Bauman, Thomas had then forced her to perform fellatio.

{¶6} In the evening after the incident, Bauman told her mother what had happened. Her mother took her to a hospital, where she was examined by a nurse who specialized in sexual-assault cases.

{¶7} When the police questioned Thomas about Bauman's allegations, he initially denied any sexual contact. But when confronted with proof that his manifest did not match the data compiled by his employer's electronic tracing system, he admitted that Bauman had performed oral sex on him. He maintained, though, that the encounter had been consensual.

{¶8} At trial, Thomas again stated that Bauman had consented to oral sex and that he had not driven her past her regular stop against her will. He testified that, although he had been aware of Bauman's disabilities, he had believed that she had been capable of consenting to sex.

{¶9} After the jury found Thomas guilty of rape and kidnapping, the trial court sentenced him to two concurrent nine-year terms.

(Doc. 11, Exhibit 7 at 2-3).


## II. PROCEDURAL HISTORY[2]

### State Action – Trial

The 2005 Term of the Hamilton County Grand Jury indicted Thomas on one count of

rape as defined in Ohio Revised Code § 2907.02(A)(1)(c); one count of gross sexual imposition

as defined in Ohio Revised Code § 2907.05(A)(5); and one count of kidnapping as defined in

---

[2] Petitioner agrees with respondent's presentation of the procedural history in this action. (Doc. 12, memo at 1). Accordingly, the Court adopts the procedural history presented in the return of writ. (Doc. 11 at 3-7).

Ohio Revised Code § 2905.01(A)(4). (Doc. 11, Exhibit 1).

The case proceeded to a jury trial and on March 20, 2006, Thomas was found guilty of all charges. (Doc. 11, Exhibit 2; *See also* Exhibit 14, Tr. Vol. 3 at 506-508). The Hamilton County Common Pleas Court held a sentencing hearing on April 6, 2006. The trial court merged the gross sexual imposition charge with the rape charge (Counts 1 and 2). The trial court sentenced Thomas to concurrent nine year sentences for rape and kidnapping, for a total of nine years. The trial court also classified Thomas as a sexually oriented offender. (Doc. 11, Exhibit 3; *See also* Doc. 11, Exhibit 14, Tr. Vol. 3 at 523-527, Case No. B-0509165).

### Direct Appeal

On April 7, 2006, Thomas, through counsel, filed a notice of appeal in the First District Court of Appeals. (Doc. 11, Exhibit 4). Thomas raised the following assignments of error in his merits brief:

> 1. Appellant was denied effective assistance of counsel in violation of his constitutional rights thus prejudicing his right to a fair trial. (Tp. Vol. II, pgs. 241-244).
>
> 2. The trial court erred as a matter of law by permitting incompetent and inadmissible hearsay evidence to be presented to the jury thus prejudicing appellant's right to a fair trial. (Tp. Vol. II, pgs. 241-244, 329-331).
>
> 3. The trial court erred as a matter of law by refusing to instruct the jury on the lesser included offense of unlawful restraint. (Tp. Vol. III, pgs. 450-452).
>
> 4. The evidence was insufficient and/or the evidence was against the manifest weight of the evidence to sustain appellant's convictions for rape, gross sexual imposition and kidnapping. (Td. 44, 45, 46).
>
> 5. The trial court erred as a matter of law by improperly sentencing appellant to separate sentences for rape and kidnapping as the offenses were allied offenses of similar import. (Td. 50A).

3

(Doc. 11, Exhibit 5). The State filed a response. (Doc. 11, Exhibit 6). On April 13, 2007, the

Court of Appeals affirmed the judgment of the trial court overruling each of Thomas'

assignments of error. (Doc. 11, Exhibit 7, Case No. C-060318).

On April 30, 2007, Thomas, *pro se*, filed a timely notice of appeal in the Ohio Supreme

Court. (Doc. 11, Exhibit 8). Thomas raised the following propositions of law in his

memorandum in support of jurisdiction:

> 1. Where trial counsel fails to object to unconstitutional procedures, the
> defendant has been deprived of the effective assistance of counsel guaranteed by
> the Sixth and Fourteenth Amendments.
>
> 2. The admission of out of court testimonial statements violates the confrontation
> clause regardless of the admissibility of the statements under the laws of evidence.
>
> 3. Where the evidence in a case supports the issuance of a jury instruction on a
> lesser included offense, it is a denial of due process and a fair trial to refuse to so
> instruct the jury.
>
> 4. Where the evidence in a criminal case is insufficient to establish an essential
> element of a charged offense beyond a reasonable doubt, a resulting conviction
> violates due process of law.
>
> 5. Where the same conduct results in two or more separate offenses without any
> separate animus, double jeopardy is violated when the defendant is convicted of
> both.
>
> 6. Where appellate counsel omits significant and obvious issues of constitutional
> magnitude that prejudice the results of the appeal, such counsel is ineffective
> within the meaning of the Sixth and Fourteenth Amendments.
>
> 7. When a sentence in a criminal case is enhanced beyond the statutory maximum
> based upon judicial fact finding of facts not alleged in the indictment, proven
> beyond a reasonable doubt to a jury or waived, the sentence violated the Fifth,
> Sixth and Fourteenth Amendments and must be vacated.

(Doc. 11, Exhibit 9). The State waived response. On July 25, 2007, the Ohio Supreme Court

denied Thomas leave to appeal and dismissed the appeal as not involving any substantial

4

constitutional question. (Doc. 11, Exhibit 10, Case No. 2007-0791).

## Federal Habeas Corpus

On October 16, 2007, Thomas filed the instant Petition for Writ of Habeas Corpus setting

forth the following grounds for relief:

**GROUND ONE:** Petitioner was deprived of effective counsel, violating the Sixth and Fourteenth Amendments.

**Supporting Facts**: At trial, trial counsel sat idly by while the prosecution presented hearsay testimony from the complaining witness's mother, which served no other purpose than to improperly bolster the accuser's claims; in violation of the Confrontation clause, yet counsel failed to object, not only prejudicing the trial but adversely affecting appellate review of the error.

**GROUND TWO:** The admission of out-of-court testimonial statements violated petitioner's rights under the confrontation clause.

**Supporting Facts**: The trial court permitted the prosecution to present out-of-court testimonial statements attributed to the accuser by way of the testimonial statements of the accuser's mother and a health care worker, which deprived petitioner of the ability to cross-examine and confront on the out-of-court statements/testimony.

**GROUND THREE:** Due process and a fair trial by impartial jury were denied by the trial court refusing to instruct on lesser included offenses.

**Supporting Facts**: The evidence at trial warranted the issuance of lesser included offense instructions on both charges, where there was sufficient evidence to find a lack of "substantial impairment" on the charged degree of rape, and to find the lack of "force" on the charged degree of kidnap[ping], warranting instructions on lesser included offenses. The trial court denied the defense request therefore (sic).

**GROUND FOUR:** Insufficient evidence to support the convictions denied petitioner due process of law.

**Supporting Facts**: The charged offense of rape required proof beyond a reasonable doubt that the accuser was "substantially impaired," yet no such proof was offered; and the charged offense of kidnapping required proof beyond a reasonable doubt of force, yet no evidence of force was presented.

**GROUND FIVE:** Petitioner's right to be free from double jeopardy was violated by multiple convictions for a single offense.

**Supporting Facts**: Under Ohio statutory definition, the offenses of kidnap[ping] and rape are "allied offenses of similar import" where, as in this case, the restraint inherent to the kidnap[ping] was not prolonged, but was incidental to the facts alleged for the rape charge.

**GROUND SIX:** Petitioner's rights under the Sixth and Fourteenth Amendments were violated by the ineffectiveness of appointed appellate counsel.

**Supporting Facts**: Appointed appellate counsel failed to present an assignment of error related to the unlawful enhancement of the otherwise statutory maximum sentence of three years concurrent, based upon uncharged enhancement elements which were not proven beyond a reasonable doubt by the State and were not found by a jury, but were imposed based upon judicial fact finding and in the absence of any waiver.

**GROUND SEVEN:** Petitioner's right to due process and to trial by jury were violated by the enhancement beyond the otherwise maximum sentence based upon judicial fact finding of uncharged elements, which were not proven beyond a reasonable doubt, presented to or found by the jury, or admitted or waived by petitioner.

(Doc. 1, petition).

## III. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132,

6

110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim

adjudicated on the merits in state court unless the adjudication either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> The phrases "contrary to" and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable . . . and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

However, if a state court does not articulate the reasoning behind its decision or fails to

address the constitutional issues, the federal court must look at the state court's decision and

conduct an independent inquiry into whether the state court reached a decision contrary to clearly

established federal law or based its decision on an unreasonable determination of the facts in

light of the evidence presented. *Schoenberger v. Russell,* 290 F.3d 831, 835 (6th Cir. 2002);

*Harris v. Stovall,* 212 F.3d 940, 943 & n. 1 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001).

The review is not a full *de novo* review of the claims, but is deferential to the state court's

determination. *Id.*

## IV. GROUND ONE, PART TWO AND GROUND TWO OF THE PETITION ARE PROCEDURALLY DEFAULTED AND WAIVED; GROUND ONE OF THE PETITION IS WITHOUT MERIT.

Ground One, part two of the petition asserts that the trial court impermissibly admitted hearsay testimony of Ms. Bauman through her mother in violation of the Confrontation Clause to the United States Constitution. Similarly, Ground Two of the petition asserts the trial court permitted the prosecution to present out-of-court testimonial statements attributed to Ms. Bauman by way of the testimonial statements of her mother and a health care worker which deprived petitioner of the ability to cross-examine and confront on the out-of-court statements. Respondent contends these grounds for relief are procedurally defaulted and waived for purposes of habeas corpus review.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, *e.g.,* to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady,* 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

9

(1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)). Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect. *Harris*, 489 U.S. at 261. No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n. 9; *see also Teague v. Lane*, 489 U.S. 288, 297-298 (1989) (plurality opinion)("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual

10

prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the instant case, the Court finds that Ground One, part two and Ground Two of the petition are procedurally defaulted because petitioner failed to fairly present his Confrontation Clause claim to the Ohio Court of Appeals on direct review. On direct appeal, petitioner argued that trial counsel's failure to object to the testimony of Ms. Bauman's mother and the trial court's admission of this testimony and that of the sexual assault nurse deprived petitioner of a fair trial. However, petitioner failed to present the legal underpinnings of his Confrontation Clause claim to the Ohio Court of Appeals. Petitioner cited to neither the Confrontation Clause, nor to state or federal cases employing a constitutional analysis of the Confrontation Clause in contesting the admissibility of the challenged testimony. *See McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001). Although petitioner did raise the confrontation issue in his memorandum in support of jurisdiction to the Ohio Supreme Court, review of this claim in the Ohio Supreme Court was nevertheless precluded by virtue of petitioner's failure to raise it before the Ohio Court of Appeals on direct appeal. Petitioner thereby waived his confrontation claim under state procedural law.[3] *See Lordi v. Ishee,* 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied,* 546 U.S. 821 (2005) (citing *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994)); *see also*

---

[3] "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry,* 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 106 (1967)(syllabus).

11

*Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001). This is an adequate and independent state ground which forecloses this Court's review of the federal constitutional claims therein in the absence of a showing of cause and prejudice. *Id.*

Petitioner committed another procedural default of his confrontation claim with respect to the testimony of Ms. Bauman's mother when he failed to object to such testimony during the trial, as acknowledged by the Ohio Court of Appeals in its decision. (Doc. 11, Exh. 7 at 4). Under Ohio law, the failure to raise a contemporaneous objection to a perceived error in the trial court constitutes a procedural bar to review of the error on direct appeal. *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000) (citing Ohio R. Crim. P. 52; *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977) (citations omitted)), *cert denied*, 531 U.S. 1021 (2000). Ohio courts, however, may perform a limited review of the record to ensure that the alleged error does not amount to a plain error affecting a substantial right. Ohio Crim. R. 52(B); *State v. Ballew*, 76 Ohio St.3d 244, 254, 667 N.E.2d 369, 379 (1996). Therefore, the appeals court reviewed the claim under the plain-error standard. (Doc. 11, Exh. 7 at 4). The primary issue in the plain-error review is whether the outcome of the trial clearly would have been different without the error. *State v. Braden*, 98 Ohio St.3d 354, 362, 785 N.E.2d 439, 452 (2003) (citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus). The state appeals court found there was no plain error: "Because Bauman's own testimony was consistent with the statement related by her mother, the out-of-court statement was merely cumulative and cannot be said to have altered the outcome of the trial. Although Thomas argues that the testimony of Bauman's mother tended to bolster Bauman's credibility, we disagree that he was unduly prejudiced by the asserted corroboration." (Doc. 11, Exh. 7 at 4).

12

The Court of Appeals determined no prejudicial error from the testimony of the sexual-assault nurse for the same reasons. *Id.* While noting that the plain error standard did not apply to the nurse's testimony,[4] the state appellate court nonetheless held that petitioner "was not deprived of a fair trial by the admission of the cumulative evidence" and that "[a]ny error was harmless beyond a reasonable doubt." *Id.* (footnote and citation omitted).

Although the Ohio Court of Appeals reviewed petitioner's claim under the plain error rule, such review did not constitute a waiver of the procedural default by petitioner. The Sixth Circuit has long held that plain-error review by the state courts does not constitute a waiver of state procedural default rules. *Seymour v. Weaver*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989)), *cert. denied*, 532 U.S. 989 (2001); *see also White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003); *Hinkle v. Randle*, 271 F. 3rd 239 (6th Cir. 2001). More importantly for this case, the Sixth Circuit has consistently held that "'Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice.'" *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003) (quoting *Hinkle*, 271 F.3d at 244). *Accord Seymour*, 224 F.3d at 557; *Scott* v. Mitchell, 209 F.3d 854, 866-71 (6th Cir.), *cert. denied*, 531 U.S. 1021 (2000). The Sixth Circuit views "'a state appellate court's review for plain error as the enforcement of a procedural default.'" *Mason,* 320 F.3d at 635 (quoting *Hinkle*, 271 F.3d at 244). Therefore, petitioner has procedurally defaulted this claim. *Mason*, 320 F.3d at 635.

The Ohio Supreme Court's subsequent unexplained decision denying petitioner leave to

---

[4]Petitioner's trial counsel did object to this testimony at trial.

13

appeal and dismissing the appeal for lack of a substantial constitutional question must be presumed to rely on the same procedural default. *See Ylst,* 501 U.S. at 803-04; *cf. Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at * *3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Ylst* and *Levine v. Torvik,* 986 F.2d 1506, 1517 n. 8 (6th Cir .), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995)), *cert. denied,* 531 U.S. 1089 (2001).

Accordingly, procedural default bars consideration of Ground One, part two and Ground Two of the petition absent a showing of cause and prejudice or that a "fundamental miscarriage of justice" will result if the claim is not considered.

To the extent petitioner asserts trial counsel's ineffectiveness as "cause" for the procedural default, which petitioner also raises as an independent claim in Ground One, part one of the petition, the Court finds the claim to be without merit.

Petitioner asserts he was denied the effective assistance of trial counsel when his attorney failed to object to the testimony of Ms. Bauman's mother. Petitioner contends this testimony constituted inadmissible hearsay, was not subject to any recognized exception to the hearsay rule, improperly bolstered the testimony of Ms. Bauman's whose credibility was at issue, and denied petitioner a fair trial.

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that

14

petitioner made an insufficient showing on either ground. *Id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Under the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694.

The Ohio Court of Appeals addressed petitioner's ineffective assistance of trial counsel claim on the merits and determined that petitioner failed to establish the "prejudice" prong of the *Strickland* test. The Court of Appeals found petitioner was not unduly prejudiced by Bauman's out-of-court statements to her mother "[b]ecause Bauman's own testimony was consistent with the statement related by her mother." (Doc. 11, Exh. 7 at 4). The Court of Appeals determined that "the out-of-court statement was merely cumulative and cannot be said to have altered the outcome of the trial." *Id.* The state appellate court also disagreed that petitioner was unduly prejudiced by the asserted corroboration of Bauman's credibility through her mother's testimony. *Id.*

Aside from the testimony of Ms. Bauman's mother, there was additional evidence supporting Ms. Bauman's version of the events. There was testimony that because of Ms. Bauman's mental disability she was unable to find her way home when any distance from her residence. There was evidence that petitioner drove past Ms. Bauman's scheduled bus stop to a secluded location for purposes of engaging in sexual activity. There was also evidence that petitioner lied about having any sexual encounter with Ms. Bauman and falsified the ACCESS manifest to cover up his actions, indicating his awareness of the wrongfulness of his actions.

15

There was further evidence that petitioner received training on recognizing the disabilities of his ACCESS passengers, that Ms. Bauman had previously been a passenger on petitioner's bus numerous times, and that petitioner was in fact aware of Ms. Bauman's mental limitations. As the Ohio Court of Appeals reasonably determined, there was no "reasonable probability" that the result of the trial would have been different had counsel objected to the testimony of Ms. Bauman's mother. Thus, petitioner was not prejudiced by counsel's alleged error.

Moreover, to the extent the testimony was impermissibly admitted, the alleged error does not amount to a fair trial violation when viewed in the context of the entire record because such testimony did not "tilt[] the scales in favor of a guilty verdict" or was "so egregious as to have nullified the legitimacy of the properly admitted substantive evidence of guilt." *Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir.1989), *cert. denied*, 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990); *Webster v. Rees*, 729 F.2d 1078, 1081 (6th Cir.1984); *see also Walker v. Engle*, 703 F.2d 959, 968 (6th Cir.), *cert. denied*, 464 U.S. 951 (1983). Accordingly, the Ohio Court of Appeals decision on petitioner's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of *Strickland*.

Therefore, Ground One, part one of the petition is without merit and petitioner's ineffective assistance of counsel claim may not serve as cause for the procedural default of Ground One, part two or Ground Two of the petition.

To the extent petitioner asserts appellate counsel's ineffectiveness constitutes cause for the procedural default of his Confrontation Clause claim (Doc. 12 at 4-6), any alleged ineffectiveness of appellate counsel does not excuse petitioner's procedural default in this case. The ineffective assistance of appellate counsel may constitute "cause" for a procedural default.

16

*See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Excusing a procedural default based on a claim of ineffective assistance of appellate counsel involves an examination of whether prejudice occurred, which in turn requires an examination of the underlying merits of petitioner's Confrontation Clause claim. *Martin v. Mitchell*, 280 F.3d 594, 606 (6th Cir. 2002) (citing *United States v. Frady*, 456 U.S. 152, 167-69 (1979); *Strickland*, 466 U.S. at 694). However, as explained below, petitioner's Confrontation Clause claim lacks merit. Therefore, appellate counsel's failure to raise this claim as an assignment of error on direct appeal would not amount to a violation of the Sixth Amendment. *See Strickland*, 466 U.S. at 694.

A defendant in a criminal trial has the right to confront the witnesses called against him. U.S. Const. amend. VI. The Confrontation Clause of the Sixth Amendment secures the right of a defendant to cross-examine an adverse witness for the purpose of uncovering possible biases and exposing the witness's motivation for testifying. *See Davis v. Alaska*, 415 U.S. 308, 316-317 (1974). Because cross-examination is "the most effective method by which a defendant can test the truth of testimony given against him," *Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984), the right of confrontation and cross-examination is considered "an essential and fundamental requirement" for a fair trial. *Barber v. Page*, 390 U.S. 719, 721 (1968) (quoting *Pointer v. Texas*, 380 U.S. 400, 405 (1965)). *See also Kentucky v. Stincer*, 482 U.S. 730, 739 (1987).

The admission of hearsay statements by a declarant not present or otherwise available for cross-examination at trial may trigger concerns of a possible violation of the defendant's right under the Sixth Amendment's Confrontation Clause to confront and cross-examine the witnesses against him. *See Crawford v. Washington*, 541 U.S. 36, 50-60 (2004). In *Crawford*, the United

17

States Supreme Court held that testimonial out-of-court statements offered against the defendant to establish the truth of the matter asserted are not admissible where the defendant had no opportunity (either before or during trial) to cross-examine the witness, regardless of the reliability of the admitted statements. *Crawford*, 541 U.S. at 68-69 (abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980)). The Supreme Court stated, "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68.

This case does not trigger any concerns under the Sixth Amendment's Confrontation Clause because the out-of-court declarant, Ms. Bauman, testified at petitioner's trial and was subjected to unrestricted cross-examination by defense counsel. In addressing this very situation, the Supreme Court in *Crawford* stated:

> [W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. *See California v. Green*, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). It is therefore irrelevant that the reliability of some out-of-court statements "'cannot be replicated, even if the declarant testifies to the same matters in court.'" *Post*, at 1377 (*quoting United States v. Inadi*, 475 U.S. 387, 395, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986)). The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

*Crawford*, 541 U.S. at 59 n. 9. *See also United States v. Kappall*, 418 F.3d 550, 554 (6th Cir. 2005) (no confrontation clause violation where psychotherapist and pediatricians testified about what sexually abused children had told them because children gave direct testimony at trial and were subject to cross-examination). Because Ms. Bauman testified at trial and was subject to cross-examination, petitioner cannot establish a Confrontation Clause violation in this case. *See United States v. Owens*, 484 U.S. 554, 560 (1988) (where a hearsay declarant is present at trial and subject to unrestricted cross-examination, the "traditional protections of the oath, cross-

18

examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements" of the Sixth Amendment). Thus, petitioner's appellate counsel's failure to raise a confrontation claim does not constitute ineffective assistance of counsel and cannot excuse petitioner's defaulted claims in this case.

Petitioner has asserted no other basis as cause for the default nor established a fundamental miscarriage of justice will occur in the absence of consideration of the constitutional claim raised in Ground One, part two or Ground Two of the petition. Accordingly, petitioner's Confrontation Clause claim is procedurally defaulted and waived for purposes of federal habeas corpus review.

In sum, petitioner has waived Ground One, part two and Ground Two of the petition for purposes of federal habeas corpus review. Ground One, part one of the petition should be denied as without merit.

## V. GROUND FOUR OF THE PETITION IS WITHOUT MERIT.

Petitioner's fourth ground for relief asserts there was insufficient evidence to support his rape and kidnapping convictions.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

19

a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.

On habeas corpus review, the federal court conducts an independent review of the state court record in analyzing petitioner's sufficiency of the evidence claim. *Nash v. Eberlin*, 437 F.3d 519, 525 (6th Cir. 2006). However, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "*Jackson* makes clear that 'a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *O'Hara v. Brigano,* 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 326). In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews*, 319 F.3d at 788.

In the instant case, petitioner asserts there was insufficient evidence to show that Ms. Bauman was "substantially impaired" to support the charged rape offense. He also contends there was no evidence supporting a finding of "force" to support the offense of kidnapping. (Doc. 12 at 8-10).

20

The First District Court of Appeals overruled petitioner's insufficiency of evidence claim

as follows:

{¶ 19} In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.

{¶ 20} The rape statute, R.C.2907.02(A)(1)(c), provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *."

{¶ 21} The kidnapping statute, R.C. 2905.01(A)(4), provides that "[n]o person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."

{¶ 22} In this case, the convictions were in accordance with the evidence. The state demonstrated that Thomas had taken advantage of Bauman's disability, specifically her inability to find her way home, to coerce her into performing fellatio. He restrained her liberty by driving past her scheduled bus stop and by driving to a place of seclusion so that he could engage in sexual activity with her.

{¶ 23} Thomas argues that he had believed Bauman capable of consenting to sexual activity and that she had in fact consented to fellatio. We are not persuaded. Thomas was trained to recognize disabilities and to treat the disabled according to their limitations. Bauman had been a passenger on Thomas's bus many times before the incident in question, and Thomas admitted his awareness that Bauman was mentally disabled. Moreover, Thomas's initial denial of any sexual activity and his falsification of the bus company's manifest confirmed his awareness that his actions were wrongful.

21

{¶ 24} Accordingly, we overrule the fourth assignment of error.

(Doc. 11, Exh. 7 at 5-7) (internal footnotes omitted).

Petitioner argues there was insufficient evidence from which the jury could conclude beyond a reasonable doubt that Ms. Bauman was "substantially impaired" for purposes of the rape offense. Petitioner argues that Ms. Bauman "was over the age of majority and consent, could function at a level, however diminished, in society, and initiated the entire conversation and subsequent events," meaning she "initiate[d] a conversation demonstrating her curiosity about sex and then to consent to experiment therewith." (Doc. 12 at 10).

The issue here is whether Ms. Bauman's ability to resist or give consent to the sexual conduct and sexual contact she engaged in with petitioner was substantially impaired because of a mental condition. "Substantially impaired" is not defined in the Ohio statute and "must be given the meaning generally understood in common usage." *State v. Zeh*, 31 Ohio St.3d 99, 104, 509 N.E.2d 414, 418 (1987). The Ohio Supreme Court has determined that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." *Zeh,* 31 Ohio St.3d at 103-104, 509 N.E.2d at 418. "[I]t is sufficient for the state to establish substantial impairment by offering evidence at trial establishing a reduction or decrease in the victim's ability to act or think." *State v. Doss*, 2008 WL 323168, \*3 (Ohio App. 8th Dist. 2008). "'Substantial impairment' need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the

22

victim's ability to either appraise or control her conduct." *State v. Dorsey*, 2008 WL 2571851, *7 (Ohio App. 5th Dist. 2008) (quoting *State v. Brady*, 2007 WL 926365, *9 (Ohio App. 8th Dist. 2007) and citing *State v. Jordan*, 2007 WL 1880029 (Ohio App. 7th Dist. 2007); *State v. Hillock*, 2002 WL 31812871 (Ohio App. 7th Dist. 2002)).

Mary Louise Bauman, Adrienne Bauman's mother testified that Adrienne is thirty-one years old, has suffered from a seizure disorder since she was six months old, and is mentally retarded. (Tr. 233, 255). Mrs. Bauman testified that Adrienne suffered from developmental delays as a young child and attended special education classes throughout elementary and high school. She testified that Adrienne has never passed a proficiency examination, was unable to read very well, and could write better than she can read. Mrs. Bauman also testified that Adrienne was unable to get around the city by herself and could not find her way home on her own. (Tr. 233-237). She further testified that Adrienne was not capable of living independently and lived with a "provider" hired by the Department of Mental Retardation and Developmental Disorders. This provider was like a "surrogate parent" to Adrienne and assisted Adrienne in her daily decision-making. (Tr. 238, 261). The provider administered medical attention in the event Adrienne had a seizure, took Adrienne to the doctor, managed her money, took her grocery shopping, and ensured she got off to work in the morning. (Tr. 238). Mrs. Bauman testified that Adrienne is employed at Goodwill (Tr. 254) where she hangs up clothing. (Tr. 257).

Karen Henshaw, a social worker with the Hamilton County Board of Mental Retardation, testified that Ms. Bauman had three of seven enumerated deficits which qualified her for services from the Board of Mental Retardation. She testified that Ms. Bauman was unable to hold a job in the community and participated in a sheltered workshop with other people with disabilities. (Tr.

23

340). Ms. Henshaw further testified that Ms. Bauman had deficits in daily living skills and in self-direction—meaning that she does not learn from her mistakes. (Tr. 340-41). She further testified that Ms. Bauman was unable to socially "gauge situations" and was "very immature and childlike." (Tr. 341, 342). She also testified that Ms. Bauman does not "perform to her IQ score" and "tests in the mild borderline range of mental retardation, but she functions more like a moderately-retarded person." (Tr. 341-342). She also testified that she did not believe Ms. Bauman would ever be able to live totally independently. (Tr. 342).

Petitioner testified that he was aware that his ACCESS passengers had mental and physical disabilities and that he had training in how to deal with people with disabilities. (Tr. 439-41). Petitioner also testified that he knew Ms. Bauman had mental health issues (Tr. 431-32) and that there was no question he knew she was mentally retarded. (Tr. 442). He described Ms. Bauman as "just like a little kid." (Tr. 443). He also testified that his manifest identified Ms. Bauman as "mr" which he understood to be mentally retarded. (Tr. 442, 447).

Based on the above testimony, there was sufficient evidence from which the jury could determine that Ms. Bauman was mentally handicapped and that petitioner was aware of her disability. There was sufficient evidence from which the jury could reasonably infer that Ms. Bauman's ability to resist or consent was substantially impaired by her mental condition. When viewed in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the essential element that Ms. Bauman was substantially impaired in her ability to consent to the sexual encounter. *Jackson*, 443 U.S. at 319.

Petitioner also contends there was insufficient evidence of "force" for purposes of the kidnapping offense. Under Ohio law, force is defined as "any violence, compulsion, or

24

constraint physically exerted by any means upon or against a person or thing." Ohio Rev. Code §
2901.01(A)(1).

There was sufficient evidence from which the jury could conclude that petitioner used
force to restrain Ms. Bauman's liberty. The evidence shows petitioner drove past Ms. Bauman's
scheduled bus stop and, after the last passenger was dropped off, drove Ms. Bauman to a
secluded area off his regular route. (Tr. 180, 184-185, 276-277, 280). There is also evidence that
petitioner locked the bus door and grabbed Ms. Bauman's arm. (Tr. 185, 186, 204). There is
further evidence that Ms. Bauman could not find her way home on her own and that petitioner
would not take her home unless she performed oral sex. (Tr. 185, 204, 233-37, 243-44). The
evidence shows that petitioner had control over the bus, locked the doors of the bus, and
compelled Ms. Bauman to remain on the bus since she did not know how to get home otherwise.
Viewed in the light most favorable to the prosecution, and coupled with the evidence showing
that Ms. Bauman was substantially impaired by her mental functioning, any rational trier of fact
could have found beyond a reasonable doubt the element of force for purposes of the kidnapping
conviction.

There was sufficient evidence from which any rational trier of fact could find petitioner
guilty of rape, sexual imposition and kidnapping beyond a reasonable doubt. When viewing all
of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, and
for the reasons discussed by the state appellate court, this Court concludes that the evidence was
constitutionally sufficient to sustain petitioner's conviction for robbery.

Therefore, Ground Four of the petition is without merit and should be denied.

25

## VI. GROUND FIVE OF THE PETITION IS WITHOUT MERIT

Ground Five of the petition asserts that kidnapping and rape are allied offenses of similar import and the trial court violated petitioner's Fifth Amendment double jeopardy rights by imposing multiple punishments for the same offense. Petitioner asserts that the restraint inherent to the kidnapping offense was not prolonged, but was incidental to the facts alleged in the rape charge and, because he had no separate animus for the kidnapping offense, he should have been sentenced on only one of the offenses. (Doc. 12 at 10).

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Constit. amend. V. This guarantee against double jeopardy, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), among other things, protects against "multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). In the "multiple punishment" context, the Double Jeopardy Clause's protection is "limited" to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977). The Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses. "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. at 499 (citations

26

omitted).

The "same elements" test established in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), *i.e.,* "whether each [statutory] provision requires proof of a fact which the other does not," is normally used in federal criminal cases to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432 U.S. at 166. The *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n.8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989). Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Banner,* 886 F.2d at 780. A state legislature may create substantive crimes and punishments that overlap to some degree without violating the Double Jeopardy Clause. *Missouri v. Hunter,* 459 U.S. 359 (1983). "Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n.8; *see also Hunter,* 459 U.S. at 368-69 ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial" without violating the Double Jeopardy Clause.); *Banner,* 886 F.2d at 780-82.

The Ohio legislature's intent in the multiple punishment area may be discerned from the

27

state multiple-count statute, Ohio Rev. Code § 2941.25. *See State v. Rance,* 85 Ohio St.3d 632, 635, 710 N.E.2d 699, 703 (1999); *see also Jones v. Baker,* 35 F.3d 566 (6th Cir. 1994) (unpublished), 1994 WL 464191, at \*\*3, *cert. denied,* 513 U.S. 1164 (1995); *Woodfork v. Russell,* 19 F.3d 20 (6th Cir. 1994)(unpublished), 1994 WL 56933, at \*\*2. The statute provides:

> (A) Where the same conduct by [the] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Ohio Supreme Court has held that this provision permits the trial court to convict and impose cumulative sentences for two or more offenses arising from the same incident if the offenses (1) are of dissimilar import; or (2) are of similar import, but were committed separately or with separate animus. *Rance,* 85 Ohio St.3d at 636, 710 N.E.2d at 703. The applicable test for deciding the issue potentially involves a two-step analysis under the state statute. First, if the statutory elements of the various crimes, considered "in the abstract" without regard to the particular facts of the case, are found to be of dissimilar import because they do not "correspond to such a degree that the commission of one crime will result in the commission of the other," the multiple convictions and punishments are permitted and the court's inquiry ends. 85 Ohio St.3d at 638, 710 N.E.2d at 704. On the other hand, if the offenses are found to be of similar import, the second level of inquiry is triggered requiring the court to determine whether or not the defendant may be cumulatively punished for them because, as a factual matter, they were

committed separately or with a separate animus. *See id.;see also State v. Jones,* 78 Ohio St.3d

12, 13-14, 676 N.E.2d 80, 81-82 (1997). This determination does not turn on "the presence or

absence of any specific factors," but rather is based on the particular facts of each case as gleaned

from the record. *Jones,* 78 Ohio St.3d at 13-14, 676 N.E.2d at 81-82.

In addressing the merits of petitioner's double jeopardy claim, the First District Court of

Appeals, the last state court to issue a reasoned opinion on the claim, determined that "[u]nder

*State v. Rance,* [85 Ohio St.3d 632, 710 N.E.2d 699 (1999),] the offenses were not allied because

each required proof of an element the other did not." (Doc. 11, Exh. 7 at 8).[5]  The Ohio Court of

Appeals went on to address petitioner's argument that the Ohio Supreme Court has reconsidered

its analysis of strictly comparing the elements of the offenses in cases involving rape and

kidnapping:

> {¶ 31} In *State v. Adams,*[103 Ohio St.3d 508, 817 N.E.2d 29 (2004)], the court
> stated, without discussing *Rance,* that rape and kidnapping are not allied offenses
> "where the restraint is prolonged, the confinement is secretive, or the movement is
> substantial so as to demonstrate a significance independent of the other offense *
> * *."

---

[5]Section 2907.02(A)(1)(c), the rape statute, provides that "[n]o person shall engage in sexual conduct with
another who is not the spouse of the offender . . . when . . . [t]he other person's ability to resist or consent is
substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows
or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because
of a mental or physical condition. . . ."

Section 2905.01(A)(4), the kidnapping statute, provides that "[n]o person, by force, threat, or deception, or,
in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from
the place where the other person is found or restrain the liberty of the other person, . . . [t]o engage in sexual activity,
as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."

Unlike the offense of rape, kidnapping requires the element of "removal of another from the place where the
other person is found or restrain the liberty of the other person." Rape, as defined in the pertinent section, requires
that the victim's "ability to resist or consent is substantially impaired because of a mental or physical condition," an
element not required for the offense of kidnapping. A comparison of the elements of each in the abstract shows the
offenses are not allied offenses of similar import under *Rance.*

{¶ 32} In the case at bar, all three of the circumstances described in *Adams* were present. Thomas drove past Bauman's bus stop and took her to a secluded location, where she was restrained for a period of time sufficient for Thomas to compel her to perform fellatio. Accordingly, the state demonstrated a separate animus for rape and kidnapping under *Adams*.

{¶ 33} So, under *Rance* and *Adams,* multiple convictions were proper. We overrule the fifth assignment of error and affirm the judgment of the trial court.

(Doc. 11, Exh. 7 at 8) (internal footnotes omitted).

On habeas review, petitioner contends that the Ohio Supreme Court's decision in *State v. Logan,* 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), compels the conclusion that the rape and kidnapping offenses are allied offenses of similar import and, therefore, the multiple punishments he received for each violate his double jeopardy rights. (Doc. 12 at 10-11).

In *State v. Adams*, 103 Ohio St.3d 508, 817 N.E.2d 29 (2004), the case cited by the Ohio Court of Appeals in its analysis of petitioner's claim, the Ohio Supreme Court restated its test in *State v. Logan, supra*, for determining when the crimes of kidnapping and rape are allied offenses of similar import:

> In *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, we established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B). We held in *Logan* that "[w]here the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." Id. at paragraph (a) of the syllabus. Conversely, the *Logan* court recognized that where the asportation or restraint "subjects the victim to a substantial increase in risk of harm separate and apart from * * * the underlying crime, there exists a separate animus." Id., 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, at paragraph (b) of the syllabus.

*State v. Adams*, 103 Ohio St.3d at 526-527, 817 N.E.2d at 50.

In petitioner's case, under the *Logan* test, a separate animus existed for each crime. Petitioner restrained Ms. Bauman's liberty when he drove past her bus stop, dropped off the remaining passengers so that he and Ms. Bauman were alone in the bus, drove her to a secluded location–a nearby park which was off his route, and locked the bus doors so she could not exit. The State produced evidence that Ms. Bauman was unable to find her way home on her own from another location. The restraint on Ms. Bauman's movement was prolonged and the movement to a secluded location was significant, thereby establishing the offense of kidnapping. Petitioner then forced her to perform oral sex against her will before he would return her to her home. This act was separate from the kidnapping. The restraint on Ms. Bauman was not incidental to the rape, but sufficient to establish a separate conviction for kidnapping. Thus, because the rape and the kidnapping each had a separate animus, the Ohio Court of Appeals' adjudication of petitioner's double jeopardy claim was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court in addressing double jeopardy "multiple punishment" violations and was reasonable in light of the evidence presented at petitioner's state criminal trial. Therefore, petitioner is not entitled to federal habeas relief based on the double jeopardy claim alleged in Ground Five.

## VII. GROUNDS SIX AND SEVEN OF THE PETITION ARE WITHOUT MERIT

Ground Seven of the petition asserts that petitioner's Sixth Amendment right to a trial by jury was violated when the trial court enhanced his sentence based on findings made by the trial judge and not the jury in violation of the constitutional principles set forth in *Apprendi v. New Jersey*, 530 U.S. 446 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). (Doc. 1; Doc. 12 at

11-12). Ground Six of the petition asserts that appellate counsel was ineffective when counsel failed to raise a *Blakely* challenge to petitioner's sentence on direct appeal. Respondent contends petitioner's sentence does not violate *Blakely* because petitioner was sentenced subsequent to the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E. 2d 740 (2006), and the trial judge did not base the sentence on any judicial fact-finding. Petitioner in his traverse brief now claims that his sentence which was imposed under the Ohio sentencing statute as modified by *Foster* violates the *Ex Post Facto* Clause of the United States Constitution and due process. (Doc. 12 at 12).

In *Blakely*, the United States Supreme Court held that an enhanced sentence imposed by a judge under a state's sentencing statute, which was based on facts neither admitted by the defendant nor found by a jury, violated the Sixth Amendment to the United States Constitution. The defendant in *Blakely* entered a guilty plea and, pursuant to the plea agreement, the state recommended a sentence within the standard range of 49 to 53 months. *Id*. at 300. The trial judge rejected the recommended sentence and, instead, imposed an exceptional sentence of 90 months based upon his own finding, by a preponderance of the evidence, that the defendant had acted with "deliberate cruelty." 542 U.S. at 302-304. The Supreme Court reversed the defendant's sentence imposed under the state's determinate sentencing scheme after finding the trial judge had enhanced the defendant's kidnapping sentence beyond the statutory maximum based upon facts neither admitted to by the defendant nor found by the jury. *Id*. at 303. The Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 303. Importantly, the *Blakely* Court

32

clarified that "the 'statutory maximum' . . . is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.*

The reasoning of *Blakely* was extended by the Supreme Court to the United States Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005), which held that the Sixth Amendment as construed in *Blakely* applied to the Federal Sentencing guidelines and thus any fact (other than a prior conviction) that increases a defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 543 U.S. at 244. The *Booker* Court held that the Sentencing Guidelines were unconstitutional insofar as they mandated that a defendant's sentence be increased based on facts not found by the jury beyond a reasonable doubt. *Id.* at 243-44. To remedy the Sixth Amendment violation, the Supreme Court severed two sections of the Sentencing Reform Act, effectively making the Sentencing Guidelines advisory. *See id.* at 244-264 (severing and excising 18 U.S.C. § 3553(b)(1) & § 3742(e)).

On February 27, 2006, the Ohio Supreme Court in *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), held that certain provisions of Ohio's sentencing statute were unconstitutional under *Blakely* because they mandated additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See id.* at 19-25, 845 N.E.2d at 490-94. Noting that the "overriding goals of Ohio's sentencing scheme are to protect the public and punish the offender," and that the Ohio legislature "delegated the role of determining the applicability of sentencing factors to judges rather than to juries to meet these overriding goals," the court

determined as in *Booker* that the proper remedy was to sever the *Blakely*-offending portions of the statutes and grant trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *Id.* at 25-30, 845 N.E.2d at 494-98. Following the severance of the unconstitutional portions, the resulting Ohio sentencing statutes eliminated the presumptions in favor of minimum and concurrent sentences and allowed a court to sentence a defendant to any term within a crime's sentencing range or to consecutive sentences without making findings of fact.

When petitioner was indicted in 2005, Ohio's sentencing statute, Ohio Rev. Code § 2929.14(B), required a judicial finding "that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others" to justify the imposition of more than the minimum sentence. However, when petitioner was sentenced on April 6, 2006, *Foster* had already been decided and was applicable to the sentencing in petitioner's case as the trial judge acknowledged:

> In light of all the circumstances of the case and consistent with the purposes and principles of sentencing as set forth in Ohio law, and in those portions of the Ohio sentencing law that remain after the Court's recent constitutional review, I sentence the defendant as follows, noting the importance of society's interest not only in protecting all of its citizens against such actions, but also ensuring that people, for example, on the ACCESS buses are safe as reasonably possible under the circumstances.

> Considering the defendant's record or lack of record and all other appropriate matters, I sentence the defendant on merged Counts One and Two to a period of nine years in the Ohio Department of Corrections to run concurrently; that is to say, at the same time, with the nine-year sentence imposed on Count Three, kidnapping, for a total of nine years with credit for time served.

(Doc. 11, Transcript at 522-523).

34

Contrary to petitioner's contention, the trial judge did not engage in impermissible fact-finding as was required under the pre-*Foster* statute. At the time petitioner was sentenced, the trial judge had full discretion to impose any prison sentence within the statutory range for any reason or no reason, without having to make findings for imposing more than minimum sentences on petitioner. *Foster,* 109 Ohio St.3d at 25-30, 845 N.E.2d at 494-98. *See also Minor v. Wilson,* 213 Fed. Appx. 450, 453 n. 1 (6th Cir. 2007). Nor did the State have any burden "to prove *anything* before the court could select any sentence within the appropriate sentencing range." *Wentling v. Moore*, 2008 WL 2778510, *8 (N.D. Ohio July 14, 2008) (emphasis in the original). Petitioner's felony one convictions for rape and kidnapping subjected him to a sentence between three and ten years for each offense. *See* Ohio Rev. Code § 2929.14(A)(1). Petitioner was sentenced to a term of imprisonment of nine years on each offense, to run concurrently. The trial judge's sentence was within the statutory range, did not exceed the maximum sentence permitted by the range, and therefore did not violate *Blakely*.[6]

---

[6] To the extent petitioner may be arguing that the Supreme Court's decision in *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856 (2007), mandates a different result (Doc. 12 at 12), his argument is without merit. Ohio's post-*Foster* statutory sentencing scheme is significantly different from the California Determinate Sentencing Law at issue in *Cunningham*. In *Cunningham*, the Supreme Court struck down California's Determinate Sentencing Law (DSL) which provided sentencing triads, three fixed tiers with no ranges between them. Under the California scheme, the sentencing judge had no discretion to select a sentence within the three fixed sentences for a specified crime without additional fact-finding permitting an upward or downward departure from the "relevant statutory maximum" of the middle tier sentence. 127 S.Ct. at 870. The Supreme Court determined that the fact-finding required to elevate a sentence to the top tier "falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies." *Id.* As a result, the Court held that the DSL violated the dictates of *Apprendi* and *Blakely* and thus violated the Sixth Amendment. *Id.* at 871.

Unlike California's Determinate Sentencing Law at issue in *Cunningham*:

Ohio's revised sentencing statutes [after *Foster*] do not require judicial findings of fact before departing from a prescribed sentencing range. Ohio courts may sentence defendants anywhere within prescribed ranges, using the statutory factors as discretionary guidelines. Ohio judges may not exceed a statutory maximum upon making requisite findings. Ohio's revised system, therefore, does not run afoul of *Apprendi* or *Blakely* as California's DSL did.

35

Petitioner also argues that the application of the *Foster* sentencing scheme had an impermissible *ex post facto* effect on his sentence. As explained above, pursuant to *Foster*, the sentencing court may impose the maximum term in its discretion without making any findings of fact. 109 Ohio St.3d at 30, 845 N.E.2d 498. Petitioner contends that since the indictment was issued in 2005, prior to the *Foster* decision, he was entitled to be sentenced under the pre-*Foster* sentencing scheme which, under *Blakely*, meant that the "maximum" sentence that he could receive was three years. Petitioner argues that *Foster* resulted in the increase of his sentence from the presumptive minimum sentence of three years without specific findings of fact and constitutes the infliction of a greater punishment than the law allowed for the crime when it was committed.

Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) " makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;" (3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Rogers v. Tennessee,* 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390 (1798) (Chase, J.)); *see also* U.S. Constit. Art. I, § 10. Ex Post Facto Clause concerns are not triggered in the case-at-hand because "by its very text [the clause] applies only to a limitation on the powers of the legislature and not to judicial decisions."

*Lyles v. Jeffreys*, No. 3:07-cv-1315, 2008 WL 1886077, *12 (N.D. Ohio April 24, 2008) (unpublished). The Court notes that a similar argument has been previously rejected by this Court in *Hooks v. Sheets*, No. 1:07-cv-520, 2008 WL 4533693 (S.D. Ohio Oct. 3, 2008) (unpublished) (Beckwith, J.).

*McGhee v. Konteh,* No. 1:07cv1408, 2008 WL 320763, at *10 (N.D. Ohio Feb. 1, 2008) (unpublished); *see also Rogers,* 532 U.S. at 456, 460 (refusing to extend the strictures of the Ex Post Facto Clause to judicial decisions "through the rubric of due process").

Nevertheless, the Fourteenth Amendment's Due Process Clause does limit *ex post facto* judicial decision-making. *Rogers,* 532 U.S. at 456. Although the Due Process Clause does not incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459 (citing *Bouie v. City of Columbia,* 378 U.S. 347, 351, 352, 354-55 (1964)); *see also United States v. Barton,* 455 F.3d 649, 654 (6th Cir.) ("when addressing *ex post facto*-type due process concerns, questions of notice, foreseeability, and fair warning are paramount"), *cert. denied,* 127 S.Ct. 748 (2006).

Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or "fair warning," because *Blakely, Booker,* and *Foster* did not change the elements necessary to convict petitioner of the rape and kidnapping charges, and petitioner was aware of the potential penalties he faced on such charges both before and after *Foster. Cf. McGhee, supra,* 2008 WL 320763, at *11. In 2005, when the crimes were committed in this case, the then-applicable provisions of Ohio's sentencing statute provided sufficient notice to petitioner that the trial court had discretion to impose non-minimum and even maximum sentences as long as the court made certain findings consistent with Ohio Rev. Code §2929.14(B). In other words, petitioner was on notice that he faced somewhere between three and ten years for the commission of a first degree felony so long as the sentencing judge made the requisite findings. Similarly, post-*Foster,* petitioner knew that

37

the trial court retained the discretion to impose sentences within the statutory range of three to ten years. Therefore, both before and after *Foster,* petitioner was on notice and thus had "fair warning" of the potential penalties he faced and of the trial court's discretion to impose those penalties. As one Ohio district court reasoned in rejecting an Ohio prisoner's *ex post facto*-type due process claim challenging his re-sentencing under *Foster* to the same maximum prison term that had been imposed pre-*Foster*:

> Prior to *Foster,* the trial court made additional findings of fact consistent with Ohio Revised Code § 2929.14(C) and sentenced Petitioner to the maximum sentence available under Ohio Revised Code § 2929.14(A)(1): ten years. Under constitutional law as Ohio courts interpreted it at the time, Petitioner was not entitled to . . . proof beyond a reasonable doubt as to the additional findings of fact required by Ohio Revised Code § 2929.14(C).

> Now, Petitioner alleges that his due process rights were violated because he has a right to . . . proof beyond a reasonable doubt under the new law arising from *Foster*. After *Foster,* the elements of the crime for which Petitioner was charged were unaffected. . . . Further, Petitioner's claim of a right to . . . trial by jury regarding sentencing factors lacks merit because, following *Foster,* the trial judge maintains discretion under Ohio Revised Code § 2929.14(A)(1) to impose a sentence in the range of three to ten years for a first degree felony based upon facts admitted by the defendant or found by a jury. Therefore, the statutory maximum for *Apprendi* purposes is ten years, as Petitioner believed it was before *Foster*.

> Since the *Foster* decision does not change the elements necessary to convict Petitioner or the potential maximum sentence that Petitioner faced for a first degree felony, *Foster* does not raise an *ex post facto*-type due process violation. Moreover, the trial judge's application of *Foster* to Petitioner's case did not violate *Apprendi* because he did not sentence Petitioner beyond the statutory maximum.

*McGhee, supra,* 2008 WL 320763, at \*11.

The Court notes that both the federal district courts and Ohio courts have rejected *ex post facto* challenges to the *Foster* decision. *See, e.g., Rettig v. Jefferys*, 557 F. Supp.2d 830, 841

(N.D. Ohio 2008) (citing Ohio cases); *Hooks v. Sheets*, No. 1:07-cv-520, 2008 WL 4533693 (S.D. Ohio Oct. 3, 2008) (unpublished) (Beckwith, J.); *Collins v. Warden, Chillicothe Corr. Inst.*, No. 3:06-cv-256, 2008 WL 728390 (S.D. Ohio Mar. 17, 2008) (unpublished) (Rice, J.; Merz, M.J.).[7] *See also Parker v. Warden*, No. 3:08-cv-322, 2008 WL 4547490 (S.D. Ohio Oct. 10, 2008) (unpublished) (Rice, J.; Merz, M.J.) (finding no merit to *ex post facto* challenge where crime committed before *Foster*, but sentenced imposed after *Foster* decided). Accordingly, the undersigned concludes that petitioner's rights under the Constitution's Ex Post Facto and Due Process Clauses were not violated when the trial court sentenced petitioner to concurrent terms of imprisonment of nine years each on the rape and kidnapping convictions.

Finally, the ineffective assistance of appellate counsel claim alleged in Ground Six of the petition which is based on counsel's alleged failure to raise a *Blakely* challenge to petitioner's sentence on direct appeal is without merit. Since petitioner's underlying *Blakely* claim lacks merit, counsel's failure to raise this claim on direct appeal did not prejudice petitioner's defense and does not amount to a violation of the Sixth Amendment. *Strickland*, 466 U.S. at 694.

Accordingly, the claims alleged in Grounds Six and Seven of the petition should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) should be DENIED with prejudice.

---

[7]It is noted that the circuit courts have uniformly rejected *ex post facto* challenges to the application of advisory sentencing guidelines to federal criminal defendants who committed crimes prior to *Booker. See, e.g., United States v. Barton*, 455 F.3d 649, 653-657 (6th Cir.), *cert. denied*, 127 S.Ct. 748 (2006) (*United States v. Booker*, 543 U.S. 220 (2005), does not violate *ex post facto* ) (and numerous cases cited therein).

39

2. A certificate of appealability should not issue with respect to Ground One, part two and Ground Two of the petition which this Court has concluded are waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[8] A certificate of appealability should not issue with respect to any other claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on the claims alleged therein. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 11/5/08
KI

Timothy S. Hogan
United States Magistrate Judge

---

[8] Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim. *See Slack,* 529 U.S. at 484.

40

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOSEPH THOMAS,
    Petitioner,

Civil Action No. 1:07-cv-858

vs.

Barrett, J.
Hogan, M.J.

TIMOTHY BRUNSMAN,
WARDEN,
    Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( *Printed Name* )     C. Date of Delivery

1. Article Addressed to:

Joseph Thomas
# 518-645
LECI
PO Box 56
Lebanon, OH 45036-0056

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No.

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
   *(Transfer from service label)*   7007 0710 0000 8134 9786

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

1:07cv858   Doc. 13